*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

PAUL HASTINGS LLP
Christopher H. McGrath (SB#149129)
chrismcgrath@paulhastings.com
4747 Executive Drive, 12th Floor
San Diego, CA 92121
TELEPHONE: (858) 458-3000
FACSIMILE: (858) 458-3005

Naveen Modi (VA Bar # 47825)*
naveenmodi@paulhastings.com
Jeffrey A. Pade (VA Bar # 45752)*
jeffpade@paulhastings.com
2050 M Street NW
Washington, D.C. 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
*admitted pro hac vice

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| XpandOrtho, Inc.; Exactech, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> Zimmer Biomet Holdings, Inc.; Zimmer, Inc.; Zimmer US, Inc. d/b/a Zimmer Biomet Southern California; ORTHOsoft ULC d/b/a Zimmer CAS, <br><br> Defendants. | CASE NO. 3:21-CV-00105-BEN-KSC <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE IN PART PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Date: September 7, 2021 <br> Time: 10:30 a.m. <br> Judge: Hon. Roger T. Benitez <br> Courtroom: 5A <br><br> JURY TRIAL DEMANDED |

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1
II. ARGUMENT ....................................................................................................... 1
    A. Counts 1–3 Are Inadequately Pled ......................................................... 1
    B. Plaintiffs Fail to Allege Fraudulent Conduct Under Rule 9(b) .............. 3
        1. Counts 1–3 and 7 Are Subject to Rule 9(b) ................................ 3
        2. All Counts Inadequately Plead Fraud .......................................... 4
    C. Plaintiffs Fail to Plead the Elements for Counts 6 and 8 ....................... 6
    D. CUTSA Preempts Counts 4, 6, and 8 ..................................................... 7
    E. Venue Is Improper for New Counts 5 and 6 Based on the LOI ........... 8
    F. Fair Use in Technical Patent Filings Precludes Count 7 ...................... 9
    G. Plaintiffs' Irrelevant and Scandalous Allegations Should Be Struck .................................................................................................... 10
        1. The Challenged Allegations Are Not Material or Pertinent ..... 10
        2. The Challenged Allegations Are Scandalous ........................... 11
    H. Exhibits 2 Through 4 Are Appropriately Considered ......................... 12
III. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*,
No. 12–528, 2013 WL 4666330 (D. Minn. Aug. 30, 2013) ............................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 2

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
No. 5:15-cv-01370-EJD, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ............................................................................................................. 1, 3

*BP W. Coast Prods., LLC v. Crossroad Petroleum, Inc.*,
No. 12CV665 JLS (KSC), 2013 WL 12377979 (S.D. Cal. Dec. 3, 2013) ............................................................................................................. 5

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
No. 2:05-cv-03459, 2014 U.S. Dist. LEXIS 154774 (C.D. Cal. Oct. 31, 2014) .......................................................................................................... 9

*Coppola v. Smith*,
No. 1:11-CV-1257 AWI BAM, 2015 WL 2127965 (E.D. Cal. May 6, 2015) ............................................................................................................ 9

*Daimler AG v. A-Z Wheels LLC*,
No. 16-CV-875-JLS (MDD), 2017 WL 9854427 (S.D. Cal. Nov. 27, 2017) ........................................................................................................ 9

*In re Daou Systems, Inc.*,
411 F.3d 1006 (9th Cir. 2005) ........................................................................ 4

*Design Art v. Nat'l Football League Props., Inc.*,
No. 00CV593 JM (JAH), 2000 WL 1919787 (S.D. Cal. Nov. 27, 2000) ........................................................................................................... 11

*El v. San Diego Unified Sch. Dist.*,
No. 20-cv-00257-AJB-AGS, 2021 WL 3240298 (S.D. Cal. June 29, 2021) ............................................................................................................ 5

***REDACTED VERSION OF DOCUMENT FILED UNDER SEAL***

*Handal & Assocs., Inc. v. Sandler*,
   No. 3:18-cv-00169, 2019 WL 2436458 (S.D. Cal. June 10, 2019) ...................... 7

*JEB Grp., Inc. v. San Jose III*,
   No. CV 19-04230-CJC(AGRx), 2020 WL 2790012 (C.D. Cal. Mar.
   31, 2020) .................................................................................................................. 8

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*,
   171 Cal. App. 4th 939 (2009) ................................................................................ 7

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................... 4

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ............................................................................... 10

*Lemberg Law, LLC v. Hussin*,
   No. 3:16-cv-01727, 2016 WL 5468189 (S.D. Cal. Sept. 29, 2016) .............. 11, 12

*Nexsales Corp. v. Salebuild, Inc.*,
   No. C-11-3915 EMC, 2012 WL 216260 (N.D. Cal. Jan. 24, 2012) ...................... 1

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................................... 3

*Power Integrations, Inc. v. De Lara*,
   No. 20-cv-410-MMA (MSB), 2020 WL 1467406 (S.D. Cal. Mar.
   26, 2020) .................................................................................................................. 3

*R Power Biofuels, LLC v. Chemex LLC*,
   No. 16-CV-00716-LHK, 2016 WL 6663002 (N.D. Cal. Nov. 11,
   2016) ........................................................................................................................ 6

*Schneider v. California Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) ............................................................................... 5

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ............................................................................... 5

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................................. 2

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................................. 11

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) .................................................................. 4

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................. 5

*Swipe & Bite, Inc. v. Chow*,
   No. 4:15-cv-03997-JST, Dkt. 1-2 (Complaint) (N.D. Cal. Sept. 1,
   2015) ....................................................................................................................... 7

*Swipe & Bite, Inc. v. Chow*,
   147 F. Supp. 3d 924 (N.D. Cal. 2015) .................................................................... 6

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................ 3

*White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London*,
   407 F. Supp. 3d 931 (S.D. Cal. 2019) .................................................................... 8

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and
   Procedure* § 1388 (3d ed. 2004) ............................................................................. 9

Fed. R. Civ. P. 9(b) ................................................................................................. 3, 4, 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5

U.S. Const., art. 1, § 8, cl. 8 ........................................................................................ 10

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

## I. INTRODUCTION

In their Opposition to Defendants' Motion to Dismiss and to Strike in Part Plaintiffs' First Amended Complaint (Dkt. 52, "Opposition"), Plaintiffs fail to rebut the many independent grounds for dismissing some or all of their First Amended Complaint (Dkt. 31, "FAC"). The Court therefore should grant Defendants' Motion to Dismiss and to Strike in Part Plaintiffs' First Amended Complaint (Dkt. 47, "Motion") to avoid substantial and baseless litigation.

## II. ARGUMENT

### A. Counts 1–3 Are Inadequately Pled

Plaintiffs' Opposition suffers from the same defects as their FAC—it repeats the same speculative statements that "Defendants are improperly using these XpandOrtho Trade Secrets to develop their own soft-tissue balancing device" and infers misappropriating activities rather than pleading actual factual support.[1] (Opp. at 11–12.) Plaintiffs must go beyond "conclusory allegations, claiming that [Zimmer] was given access to confidential and proprietary information." *Nexsales Corp. v. Salebuild, Inc.*, No. C-11-3915 EMC, 2012 WL 216260, at *2 (N.D. Cal. Jan. 24, 2012) (dismissing CUTSA claim where the plaintiff "fails to identify the information that was taken, and does not provide facts demonstrating that the information constitutes a trade secret"). Plaintiffs fail to do so.

Contrary to Plaintiffs' contention, the Court can determine the sufficiency of trade secrets counts at the motion-to-dismiss stage when, as here, public disclosure of the alleged trade secrets is uncontrovertable and Plaintiffs have not otherwise alleged a particular trade secret that was misappropriated. *Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2015 WL 8028294, at *4 (N.D. Cal. Dec.

---

[1] It is uncontroverted that Zimmer has long pursued its own patents in this technology space without any consideration of XpandOrtho or its products; Plaintiffs' insinuation of misconduct based on these ongoing lawful activities after Zimmer opted not to acquire XpandOrtho is pure speculation and does not support a claim for misappropriation. (*See* Mot. at 2; Dkt. 34-5; Exs. J, T; Opp. at 10–11.)

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

7, 2015) (dismissing trade secrets claims for "failure to adequately plead a trade secret" where at least some of the alleged trade secrets were "publicly known," including "those aspects that are part of patents and pending patent applications"). Here, Plaintiffs fail to adequately plead misappropriation and a breach of Zimmer, Inc. and XpandOrtho's NDA, especially in light of the undisputed public materials disclosing the relevant alleged trade secrets that are properly subject to judicial notice. Notably, the Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"; this precludes Plaintiffs' arguments that the mere pleading of alleged trade secrets and misappropriation overcomes contrary contextual material subject to judicial notice. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiffs identify with any particularity only three alleged trade secrets as misappropriated/misused out of the numerous alleged trade secrets that Defendants lawfully accessed under the NDA: (1) images from the XO[1] Animation (FAC ¶ 256–61); (2) the concept of a unicompartmental pneumatic trial implant (FAC ¶ 262), and (3) measuring displacement with magnetic sensors (FAC ¶ 263). Each of these was disclosed publicly by the time of the alleged misappropriation, and thus cannot state a claim.[2] (*See* Mot. at 13–15; Exs. 2, A–L.) Plaintiffs' allegations regarding the remaining trade secrets are insufficient under *Iqbal* and *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). Plaintiffs' claim that Defendants "attempt[ed] to redact out XpandOrtho's name" in their patent filings also is a red herring, as the associated published patent application *did* expressly refer to XpandOrtho. (FAC ¶¶ 259–60.)

Plaintiffs attempt to mask these fatal defects by claiming dozens of purported trade secrets have been misappropriated in ¶ 84 of the FAC. But most of these alleged trade secrets are not substantively discussed anywhere in the FAC; they are

---

[2] Unable to deny that these alleged trade secrets were disclosed publicly, Plaintiffs attempt to divert the Court's attention by labeling them "a straw man." (Opp. at 8.)

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

instead covered only by conclusory statements that "the Defendants misappropriated the XpandOrtho Trade Secrets" following Defendants' lawful access to them. (FAC ¶¶ 317, 340, 362–69.) Combining a list of alleged trade secrets with conjecture that Defendants misappropriated those trade secrets given their access to XpandOrtho due diligence materials does not adequately plead a claim.[3] *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) (merely alleging possession of trade secrets does not state a claim for misappropriation); *Power Integrations, Inc. v. De Lara*, No. 20-cv-410-MMA (MSB), 2020 WL 1467406, at *19 (S.D. Cal. Mar. 26, 2020) ("Defendants' mere knowledge of Plaintiff's alleged trade secrets is insufficient to constitute misappropriation.").

Allowing Counts 1–3 to proceed would permit any company that undergoes due diligence but ultimately is not acquired to then turn around and harass the potential acquirer with a lawsuit if the acquirer operates in the same technology space and had access to confidential information. This is not and should not be the law, and is exactly the type of pleading that the Rules are designed to prevent.

### B. Plaintiffs Fail to Allege Fraudulent Conduct Under Rule 9(b)

#### 1. Counts 1–3 and 7 Are Subject to Rule 9(b)[4]

Plaintiffs erroneously focus on the formal elements of their claims, rather than the actual allegations in the FAC. The FAC alleges a unified course of fraudulent conduct, and it is irrelevant that fraud is not a necessary element of Counts 1–3 and 7; fraud can be averred "by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317

---

[3] Plaintiffs' belated attempt to parse out what qualifies as a trade secret from its barebones list only confirms that "it is unknown" from the FAC itself "which aspects are publicly known and which are not," which "reaffirms . . . that Plaintiffs have not described their trade secret[s] with sufficient particularity." *Bladeroom*, 2015 WL 8028294, at *4.

[4] Plaintiffs concede that Counts 4–6 and 8 must satisfy Rule 9(b). (*See* Opp. at 13.)

F.3d 1097, 1105 (9th Cir. 2003); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("While fraud is not a necessary element of a claim . . . a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct."). Here, Plaintiffs allege fraudulent misconduct throughout their FAC and claims; all counts thus are subject to Rule 9(b) by incorporating those allegations.

Counts 1–3 and 7 effectively allege that Zimmer made false representations with the intent to access and misuse confidential information and the copyrighted XO[1] Animation. (*See, e.g.*, FAC ¶¶ 4, 218, 248, 367, 428 ("Zimmer secretly filed[/filing]"), ¶ 109 ("Zimmer led XpandOrtho to believe they were interested in acquiring XpandOrtho"), ¶ 260 (Zimmer "attempted to hide its misappropriation"), ¶ 296 (Zimmer's "scheme to fool"); *Kearns*, 567 F.3d at 1125–27 ("general pleadings" alleging intent "do not satisfy the heightened pleading requirements of Rule 9(b)").) These counts also incorporate by reference Plaintiffs' fraud allegations, including the core fraud allegation in ¶ 109 of the FAC that "Zimmer [falsely] led XpandOrtho to believe they were interested in acquiring XpandOrtho." (FAC ¶¶ 109, 310, 333, 356, 411.[5]) They therefore sound in fraud. *See In re Daou Systems, Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005) ("all of plaintiffs' claims, whether including an element of fraud or not, must satisfy the heightened pleading standard set out in Rule 9(b)" where "the complaint makes a 'wholesale adoption' of the securities fraud allegations") (citation omitted).

### 2. All Counts Inadequately Plead Fraud[6]

As explained in Defendants' Motion, Plaintiffs consistently and concededly

---

[5] Count 7 further explicitly incorporates "each and every allegation in the foregoing paragraphs," including those in Plaintiffs' fraud claim (Count 4). (FAC ¶ 411.)
[6] Plaintiffs do not dispute that their allegations in Counts 1–3 and 7 are inadequately pled under Rule 9(b); those counts therefore fail to the extent that Rule 9(b) applies. (Opp. at 15.) *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening

plead core facts "on information and belief," which does not suffice. (Mot. at 5–6; Opp. at 12–13, 17.) *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) ("[Fraud c]laims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded." (citation omitted)). Each of Plaintiffs' counts also fails to identify who engaged in the allegedly fraudulent conduct other than by inadequate references to Mr. Ewald Kried and Mr. Pierre Couture, and often merely identify the corporate defendants. (*See, e.g.*, FAC ¶¶ 125, 140, 284–97, 318–25, 327, 341–48, 353, 359–77, 379–84, 388–92, 397–405, 414–24, 428–32 (allegations against "Defendants" or "Zimmer").) *See BP W. Coast Prods., LLC v. Crossroad Petroleum, Inc.*, No. 12CV665 JLS (KSC), 2013 WL 12377979, at *3 (S.D. Cal. Dec. 3, 2013); *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

Plaintiffs point to their allegations in ¶¶ 128–40 of the FAC regarding Mr. Kreid's purported involvement in negotiations with XpandOrtho on Zimmer's behalf. (Opp. at 16.) But this ignores the many other unspecified allegations of fraud throughout the FAC. Moreover, and crucially, ¶¶ 128–40 are expressly *not* incorporated into Counts 1–3 of the FAC. (FAC ¶¶ 310, 333, 356.) At a minimum, by not incorporating their allegations related to Mr. Kreid across the FAC, Plaintiffs cannot adequately support their fraud allegations that permeate those claims.[7] Similarly, Plaintiffs often named one individual who allegedly was involved in

---

brief constitutes waiver or abandonment in regard to the uncontested issue.") (citations omitted); *El v. San Diego Unified Sch. Dist.*, No. 20-cv-00257-AJB-AGS, 2021 WL 3240298, at *2 (S.D. Cal. June 29, 2021).

[7] Plaintiffs' attempts to jerry-build factual support for its unified theory of fraudulent conduct (which extends far beyond the facts alleged in ¶¶ 128–40, 254, and 367 of the FAC) via the limited allegations involving Mr. Kreid and Mr. Couture should be disregarded since the FAC must stand on its own. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

some of the alleged fraudulent conduct, with impermissible non-limiting language, such as "for example" or "including," that fails Rule 9(b). (*See, e.g.*, ¶¶ 367, 379, 398–99, 401–08, 410.) *See R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *13 (N.D. Cal. Nov. 11, 2016).

### C. Plaintiffs Fail to Plead the Elements for Counts 6 and 8

Plaintiffs also have failed to adequately plead the elements of Counts 6 and 8. As one example for Count 6, Plaintiffs speculate that "[a]s a result" of the 45-day exclusivity period in the LOI between Zimmer and XpandOrtho, somehow "Exactech did not acquire XpandOrtho until ten months later." (*See* Opp. at 20; FAC ¶ 392.) The FAC offers no explanation for how a short 1.5-month exclusivity period resulted in the 10-month delay that "harmed Exactech's ability to exploit technological and commercial benefits of XpandOrtho at an earlier date and maintain an advantage over competitors." (Opp. at 20; *see also* FAC ¶ 408.) This does not plead a plausible economic relationship and expectation of future economic benefit—especially because it took XpandOrtho and Exactech an additional 8.5 months to actually commit to the acquisition after the exclusivity period with Zimmer expired.

*Swipe & Bite* is inapposite. Contrary to Plaintiffs' claim, the court did *not* hold an allegation that other entities had "expressed interest in [Swipe & Bite's] product" sufficiently pleads an expectation of economic benefit and resulting economic harm—instead, the court made an offhand reference to it and then *dismissed* the claim due to a failure to allege that the defendant knew of the other purported economic relationships. *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015). Further, the complaint in that case did not merely allege a preliminary overture for a *possible* letter of intent with another entity, like the FAC does. (*See* FAC ¶¶ 130–31.) Rather, Swipe & Bite had alleged that it "had established key business relationships with key customers . . . [and] *had agreements in place*," and that the defendants were "aware of the Company's agreements" and

knew "that the Company was in the process of closing license agreements with some of these major customers." *Swipe & Bite, Inc. v. Chow*, No. 4:15-cv-03997-JST, Dkt. 1-2 (Complaint), ¶ 24 (N.D. Cal. Sept. 1, 2015) (emphasis added). That is far more substantial than the FAC's mere reference to an "unsolicited letter of intent from ▇▇▇▇," which does not adequately plead an expectancy of economic advantage. (FAC ¶¶ 130–31.)

Plaintiffs also strangely cite *Handal* to argue that "[a]t the pleading stage, [Plaintiff] is not required to provide factual evidence." (Opp. at 21 (quoting *Handal & Assocs., Inc. v. Sandler*, No. 3:18-cv-00169, 2019 WL 2436458, at *5 (S.D. Cal. June 10, 2019)).) Zimmer is not requesting evidence—it requests only adequate, non-speculative pleading, which Plaintiff *is* required to provide at this stage. *See Twombly*, 550 U.S. at 555.

### D. CUTSA Preempts Counts 4, 6, and 8

Plaintiffs erroneously posit isolated distinctions between their CUTSA allegations in Count 2 and those in Counts 4, 6, and 8. Preemption does not require equivalence among the facts supporting these claims—it requires only "the same *nucleus* of facts." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 958 (2009) (emphasis added) (citation omitted). This same nucleus of facts is manifest where the FAC ties Counts 4, 6, and 8 to the alleged misappropriation by (1) alleging proximate injury by fraud in Count 4 via "providing confidential and proprietary information to Defendants who intended and then did (and still are) misusing [*i.e.*, misappropriating] that information" (FAC ¶ 381); (2) relying on Zimmer's alleged misappropriation as the method by which Zimmer allegedly gained the economic advantages in which Exactech had a purported expectancy to "divert revenue from Exactech's soft tissue balancing products" for Count 6 (FAC ¶¶ 399–401, 407); and (3) alleging that Zimmer's misappropriation by "filing the Couture Patent Assets" and "developing soft tissue balancing products" based on "XpandOrtho's confidential, proprietary, and trade

secret information" (*i.e.* its alleged trade secrets misappropriation) "constitute unlawful business practices and unfair competition" for Count 8 (FAC ¶¶ 429–31). CUTSA thus preempts Counts 4, 6, and 8.[8]

### E.   Venue Is Improper for New Counts 5 and 6 Based on the LOI

Plaintiffs improperly claim that, although Exactech is a party to Counts 5 and 6, which are based on the LOI, and is XpandOrtho's parent, it somehow is not bound by the LOI's forum-selection clause. Plaintiffs' position is untenable—either the LOI allegations do not apply to Exactech, and therefore it cannot assert Claims 5 or 6 in this action, or those allegations do apply to Exactech and therefore it is subject to the parties' choice of forum, whether as XpandOrtho's parent company or as a third-party beneficiary now claiming rights based on the LOI.[9] *White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 946–47 (S.D. Cal. 2019) (a forum-selection clause may be enforced against a non-party "when the non-party is a third-party beneficiary of the contract with the clause"). Exactech thus is subject to the LOI's forum-selection clause.

Defendants' agreement not to challenge venue in response to Plaintiffs' original complaint does not apply to the FAC because Plaintiffs revised the fundamental basis for Counts 5 and 6.[10] (*Compare* FAC ¶¶ 390, 406, *with* Dkt. 1

---

[8] To the extent the Court finds these counts are not entirely preempted, the Court should at least dismiss the cited allegations, which directly relate to misappropriation, as Plaintiffs themselves propose. (Opp. at 21–22 (stating that "when a claim is based upon a combination of trade secret and non-trade secret allegations, dismissal is appropriate with respect to the trade secret allegations").); *see also JEB Grp., Inc. v. San Jose III*, No. CV 19-04230-CJC(AGRx), 2020 WL 2790012, at *4 n.3 (C.D. Cal. Mar. 31, 2020) (finding unfair business practices claim preempted "to the extent it is premised on Defendants' 'unlawful use or dissemination of MoTek's confidential and proprietary information and trade secrets'" (citation omitted)).

[9] Plaintiffs do not dispute that Exactech's co-plaintiff and subsidiary, XpandOrtho, is subject to the LOI's forum-selection clause.

[10] Notably, Plaintiffs never indicated that they would add the LOI as a basis for their claims when they requested a venue waiver.

¶ 338.)  In the FAC, Plaintiffs alleged the LOI as the basis for Plaintiffs' Counts 5 and 6, whereas the original complaint based these claims on Zimmer and XpandOrtho's NDA.  (*Compare* FAC ¶¶ 388–90, *with* Dkt. 1 ¶¶ 335–44.)  Plaintiffs' sole case is inapposite and does not address whether a waiver applies where a party changed the basis of its claims.  *See Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 2:05-cv-03459, 2014 U.S. Dist. LEXIS 154774, at *9 (C.D. Cal. Oct. 31, 2014).  Because Counts 5 and 6 are now based on an entirely different agreement, which includes a forum-selection clause, Defendants did not waive their venue defense.  *See Coppola v. Smith*, No. 1:11-CV-1257 AWI BAM, 2015 WL 2127965, at *2–3 (E.D. Cal. May 6, 2015) (adopting the majority approach that "[w]here the amendments to the complaint change a theory or the scope of the case, 'the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff'" (citations omitted)); *cf. Daimler AG v. A-Z Wheels LLC*, No. 16-CV-875-JLS (MDD), 2017 WL 9854427, at *2 n.1 (S.D. Cal. Nov. 27, 2017) ("The filing of an amended complaint will not revive the right to present by motion defenses that *were* available but were not asserted in timely fashion prior to amendment of the pleading." (emphasis added) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (3d ed. 2004))).

### F. Fair Use in Technical Patent Filings Precludes Count 7

Plaintiffs mistakenly claim that fair use is not properly considered at the motion-to-dismiss stage.  Fair use may be resolved at this stage when, like here, the relevant facts are undisputed.  Plaintiffs raise no factual challenges—they instead point to conclusory statements in the FAC and dispute the consequence of Defendants' uncontroverted facts.  (*See, e.g.*, FAC ¶¶ 417–19 (alleging that Defendants' conduct was "commercial in nature" and "not transformative," and that the part of the XO[1] Animation copied was the "heart" of the animation), ¶ 286 (alleging that the agreed facts qualify the XO[1] Animation as a "creative artistic work"), ¶¶ 420–21 (speculating that Defendants' conduct "has negatively affected

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

the market value of the XO$^1$ Animation itself" and "has harmed Plaintiffs' ability to license the XO$^1$ Animation"), ¶ 424 (concluding that Defendants' conduct was "substantially injurious and detrimental to Plaintiffs and their business").)

Ultimately, the facts applicable to Count 7 are straightforward: Defendants' allegedly adapted modified still images from the copyrighted XO$^1$ Animation in their patent filings. The parties agree what the adapted images looked like; the only dispute is whether the facts concerning Defendants' use constitutes fair use, which can be resolved at this stage. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (concluding that "the district court's resolution of the fair use issue at the motion to dismiss stage was proper," and was "substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute"). Applying these undisputed facts to the fair use factors establishes fair use; Count 7 thus should be dismissed. (Mot. at 17–22.) As a matter of law, Zimmer can use modified technical images in its patent filings to illustrate basic principles and the claimed technology, notwithstanding that the original images were copyrighted. *See Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*, No. 12–528 (RHK/JJK), 2013 WL 4666330, at *18 (D. Minn. Aug. 30, 2013) (finding that use of copyrighted works "for the purpose of supporting [] patent applications" was fair use and "promote[d] the Progress of Science and useful Arts" (citing U.S. Const., art. 1, § 8, cl. 8)).

### G.  Plaintiffs' Irrelevant and Scandalous Allegations Should Be Struck

References to the three unrelated matters that Plaintiffs added in an attempt to cast Zimmer as a bad actor are improper and incorrect, and should be struck.

#### 1.  The Challenged Allegations Are Not Material or Pertinent

Plaintiffs argue that unrelated litigations "bear a necessary and important relationship to deterrence" and to any purported "award [of] exemplary damages under both the DTSA and CUTSA." (Opp. at 31–32.) Their cited authority holds otherwise and reiterates that unrelated litigation is immaterial and impertinent to

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

this case. In *State Farm*, the Supreme Court held that punitive damages were excessive because they were awarded "to punish and deter conduct that bore no relation to the [Plaintiff's] harm." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id*. In fact, the Court observed that "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id*. at 423. Plaintiffs improperly ask the Court to determine whether "Zimmer misappropriated ▮ trade secrets" regarding Zimmer's due diligence discussions with ▮ (Opp. at 32.) Plaintiffs thus ask this Court to adjudicate the merits of ▮ hypothetical claims against Zimmer in determining punitive damages, which would violate due process. Similarly, the *Howmedica* and *Heraeus* cases involve completely independent facts and cannot serve as a basis for punitive damages in the present case. (*See* Mot. at 27–30.)

Plaintiffs' allegations that these matters show a "routine practice of failing to respect the confidential information of other companies" (Opp. at 32) have no important relationship to their claims and are not necessary to resolve any issue in this case. *Design Art v. Nat'l Football League Props., Inc.*, No. 00CV593 JM (JAH), 2000 WL 1919787, at *4–5 (S.D. Cal. Nov. 27, 2000) (striking paragraphs about the defendant's purported "custom and habit of usurping other's designs and using the same as their own" because they had no important relationship to the plaintiff's copyright infringement claims and were unnecessary to the issues).

### 2. The Challenged Allegations Are Scandalous

Plaintiffs' argument that the unrelated matters are "indications of Zimmer's repeated practice of trade secret misappropriation" and therefore not scandalous is unpersuasive. The *Hussin* case cited by Plaintiffs is inapposite because, in that case, the defendant's allegations that plaintiff cheated defendant out of money and

filed the action to harass, annoy, and embarrass went "to the heart of" defendant's claims. *See Lemberg Law, LLC v. Hussin*, No. 3:16-cv-01727, 2016 WL 5468189, at *6 (S.D. Cal. Sept. 29, 2016). That case did not even involve allegations of unrelated litigations. *See id.* Here, Plaintiffs attempt to use unrelated matters, findings, and unverified allegations to disparage Defendants. They have no basis to do so; the challenged allegations thus should be struck.

### H. Exhibits 2 Through 4 Are Appropriately Considered

Exhibits 2–4 to Defendants' Motion summarize the material already in other exhibits and analyzed in Defendants' Motion: Exhibit 2 provides a reference table of XpandOrtho's public disclosure of its alleged trade secrets; which Defendants cite, quote, and discuss in Section IV.D.1 of their Motion; Exhibit 3 contains a reference table of the relevant frames from the XO$^1$ Animation and ORTHOsoft and Zimmer's fair use of portions those images, as discussed in Section IV.E of their Motion; and Exhibit 4 contains a reference table of which paragraphs of the FAC correspond with Plaintiffs' asserted counts, per Defendants' arguments in Section IV.A of their Motion. These exhibits compile the materials discussed in Defendants' Motion and are offered solely to provide helpful reference to the Court when evaluating the parties' arguments and the relevant facts.[11] Defendants respect the Court's rules and view these exhibits as compliant with normal practice.

## III. CONCLUSION

For the reasons above and in their Motion, Defendants respectfully request that the Court grant their Motion.

---

[11] Defendants provided similar exhibits in their motion to dismiss Plaintiffs' original complaint, without objection from Plaintiffs. (*See* Dkts. 20-3, 20-4, 20-5.) And when the parties negotiated the agreed page-count extension for the present briefing (Dkt. 42), Plaintiffs never mentioned an issue with such exhibits.

*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

| | |
|---|---|
| DATED: August 31, 2021 | Respectfully submitted,<br><br>PAUL HASTINGS LLP<br><br>By: */s/ Jeffrey A. Pade*<br>　　　JEFFREY A. PADE<br><br>Christopher H. McGrath<br>(CA Bar # 149129)<br>chrismcgrath@paulhastings.com<br>4747 Executive Drive, 12th Floor<br>San Diego, CA 92121<br>Telephone: (858) 458-3000<br>Facsimile: (858) 458-3005<br><br>Naveen Modi (VA Bar # 47825)*<br>naveenmodi@paulhastings.com<br>Jeffrey A. Pade (VA Bar # 45752)*<br>jeffpade@paulhastings.com<br>2050 M Street NW<br>Washington, D.C. 20036<br>Telephone: (202) 551-1700<br>Facsimile: (202) 551-1705<br>*admitted pro hac vice*<br><br>Attorney for Defendants<br>Zimmer Biomet Holdings, Inc.,<br>Zimmer, Inc., Zimmer US, Inc., and<br>ORTHOsoft ULC |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 31, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any documents filed under seal will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

*/s/ Jeffrey A Pade*
Jeffrey A. Pade